[Cite as *In re N.S.*, 2016-Ohio-428.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN RE: N.S. | : | |
| | : | |
| | : | C.A. CASE NO. 26748 |
| | : | |
| | : | T.C. NO. 2007-11143 |
| | : | |
| | : | (Civil appeal from Common Pleas |
| | : | Court, Juvenile Division) |
| | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___5th___ day of ____February____, 2016.

. . . . . . . . . . .

M. M., Dayton, Ohio
        Appellant

JENNIFER L. BROGAN, Atty. Reg. No. 0075558, 400 PNC Center, 6 North Main Street, Dayton, Ohio 45402
        Attorney for Appellee

. . . . . . . . . . . .

DONOVAN, P. J.

{¶ 1} Defendant-appellant M.M. (hereinafter referred to as "Mother"), acting pro se, appeals a decision of the Montgomery County Court of Common Pleas, Juvenile Division, adopting a decision of the magistrate which terminated the parties' shared parenting agreement and granted legal custody of N.S. to J.S. (hereinafter referred to as "Father"). Mother filed a timely notice of appeal with this Court on June 19, 2015.

{¶ 2} N.S. was born to Mother and Father in 2002. Mother and Father lived together as family unit with N.S., but were never married. Mother and Father's relationship ended sometime in 2006 or early 2007. Thereafter, the parties entered into an agreed parenting schedule whereby Mother was named the legal custodian of N.S., while Father was awarded generous visitation with his child.

{¶ 3} On December 20, 2011, the parties entered into a shared parenting plan. Pursuant to the plan, Mother and Father agreed to share all decisions related to the care and health of N.S. Additionally, Mother and Father were awarded parenting time of N.S. on an alternating weekly basis. Neither parent was designated as the residential parent of N.S. for school attendance purposes.

{¶ 4} On March 20, 2014, Father filed a motion to terminate the shared parenting plan and be designated the residential parent and legal custodian of N.S. Father's stated rationale for filing the motion to terminate was Mother's increasingly erratic behavior and failure to address her issues with alcohol abuse. On March 26, 2014, Father filed an ex parte motion for interim temporary custody of N.S. which the trial court subsequently denied. On April 14, 2014, the parties filed an agreed entry which provided that Mother's parenting time with N.S. was to be supervised. On July 18, 2014, the magistrate held an in camera interview of N.S.

{¶ 5} A hearing was held on Father's motion to terminate the shared parenting plan on October 16, 2014. Both parties were represented by counsel. On October 22, 2014, the magistrate issued his decision finding that it was in the best interest of N.S. to terminate the parties' shared parenting agreement and granted legal custody of N.S. to Father. Mother filed objections to the magistrate's decision on November 5, 2014. On

January 8, 2015, Mother filed supplemental objections to the magistrate's decision. Father filed a memorandum in opposition to Mother's supplemental objections to the magistrate's decision on January 20, 2015. On May 21, 2015, the trial court issued a decision and judgment overruling all of Mother's objections and adopting the magistrate's decision in its entirety.

{¶ 6} It is from this judgment that Mother now appeals.

## ANALYSIS

{¶ 7} Initially, we note that Mother's pro se brief presents no distinct assignments of error. Rather, Mother dedicates the entirety of her brief to challenging the veracity of the testimony adduced at the October 16, 2014, hearing before the magistrate. Essentially, Mother asserts that the trial court's decision adopting the decision of the magistrate was against the manifest weight of the evidence, and therefore, it was not in the best interests of N.S. to terminate the shared parenting plan and grant legal custody to Father.

{¶ 8} Rule 16 of the Ohio Rules of Appellate Procedure requires an appellant's brief to include a "statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." App.R. 16(A)(3). This rule also requires several other things missing from Mother's brief: a table of contents, with page references, App.R. 16(A)(1); a table of cases, App.R. 16(A)(2); a statement of the case or statement of the facts relevant to the assignment of errors, App.R. 16(A)(5) and (6); and an "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions,

with citations to the authorities, statutes, and parts of the record on which appellant relies," App.R. 16(A)(7). Appellate Rule 12 provides that a court of appeals may "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." App.R. 12(A)(2). While we are mindful that such omissions authorize this Court to either strike the offending portions of the brief or sua sponte dismiss the appeal, we would generally still review the merits of appellant's claims in the interests of justice, and we will do so in the instant case. *See VanHeulen v. VanHeulen*, 2d Dist. Greene No. 2015-CA-29, 2015-Ohio-4792, ¶¶ 10, 11.

**{¶ 9}** R.C. 3109.04 permits a court to modify a decree allocating parental rights, R.C. 3109.04(E)(1), and to terminate a shared parenting decree, R.C. 3109.04(E)(2)(c). Generally, to modify parental rights, the court must first find that there has been a change in circumstances. R.C. 3109.04(E)(1)(a). But a change in circumstances is not required before terminating shared parenting; "nothing in R.C. 3109.04(E)(2)(c) requires the trial court to find a change of circumstances in order to terminate a shared parenting agreement." *Curtis v. Curtis,* 2d Dist. Montgomery No. 25211, 2012–Ohio–4855, ¶ 7, citing *Brennaman v. Huber,* 2d Dist. Greene No. 97 CA 53, 1998 WL 127081, * 2 (Mar. 20, 1998). To terminate shared parenting, the statute requires only " 'that the court find that it is in the best interests of the minor child.' " *Toler v. Toler,* 2d Dist. Clark No. 10–CA–69, 2011–Ohio–3510, ¶ 11, quoting *Beismann v. Beismann,* 2d Dist. Montgomery No. 22323, 2008–Ohio–984, ¶ 8.

**{¶ 10}** Pursuant to R.C. 3109.04(E)(2)(c), a court may terminate an order of shared parenting upon the request of one or both of the parents or when "it determines that

shared parenting is not in the best interest of the children." In determining the best interest of a child, the court must consider all relevant factors, including, but not limited to: the wishes of the child's parents regarding the child's care; if the court has interviewed the child in chambers, the wishes and concerns of the child as expressed to the court; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate court-approved parenting time or visitation and companionship rights; whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and whether either parent has established a residence, or is planning to establish a residence, outside this state. R.C. 3109.04(F)(1).

{¶ 11} "The manifest-weight-of-the-evidence standard of appellate review set forth in *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), applies in both criminal and civil cases. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 17–23." *Mathews v. Mathews,* 2d Dist. Clark No. 2012–CA–79, 2013–Ohio–2471, ¶ 9.

{¶ 12} This court has stated that "a weight of the evidence argument challenges

the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones,* 2d Dist. Montgomery No. 25724, 2014–Ohio–2309, ¶ 8. "When evaluating whether a [judgment] is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.,* quoting *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 13} Because the trier of fact sees and hears the witnesses at trial, we must extend deference to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we extend less deference in weighing competing inferences suggested by the evidence. *Id.* The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the evidence. *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009–Ohio–525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} Upon review, we find that the trial court did not err when it adopted the decision of the magistrate terminating the shared parenting plan and naming Father the legal custodian of N.S. The evidence adduced at the hearing established that Father is able to provide a stable and supportive home environment for N.S. Specifically, the

evidence established that N.S. struggles in school and needs constant direction.   Father testified that he has a specific schedule which he follows with N.S. in order to assist him with his homework.   Father also provides a safe and stable environment for N.S.   Father testified that he has been employed with the Dayton Fire Department for approximately twenty-one years and had earned the rank of Lieutenant.   Father is married, and the testimony established that N.S. had a positive bond with the new wife and her two daughters from another relationship.

{¶ 15} Conversely, the evidence established that Mother, although well-intentioned, has not provided a stable home environment for N.S.   Specifically, after being terminated from her employment at St. Vincent DePaul in February of 2013, Mother made no effort to seek reemployment until approximately thirteen months later when she began working for the Eagles Organization in April of 2014.   During the time that she was unemployed, Mother lived with her boyfriend, J.R.   The testimony established that Mother and J.R. had a volatile relationship, and that Mother had a significant alcohol problem.   Mother moved out of J.R.'s residence in March or April of 2014.   At the time of the hearing, Mother testified that she was living with members of her family whom she described as unstable, irresponsible, and manipulative.   In fact, the evidence established that in September of 2014, only one month before the hearing, the police were dispatched on two occasions to intervene in an ongoing dispute between Mother and her sister and her sister's roommate.

{¶ 16} Moreover, the evidence established that since the date that the shared parenting plan was executed, Mother has been involved in two criminal cases.   In August of 2012, Mother was arrested and charged with operating a vehicle under the influence

(OVI). On February 4, 2014, Mother was charged in Kettering Municipal Court for a second OVI, as well as failure to control, failure to wear a seatbelt, failure to obey the lanes of travel upon a roadway, and failing to stop. As a result of the second arrest, Mother spent approximately eight days in jail.

{¶ 17} More disconcerting is the fact that Mother was hospitalized twice in March of 2014 for acute alcohol intoxication and fears that she may harm herself. With respect to the first hospitalization, Mother was taken to Soin Medical Center on March 6, 2014 after J.R. called the police because Mother was drunk and out of control. Beavercreek Police Officer James Spicer, who arrived at J.R.'s residence, testified that Mother was combative and had cut herself on the top of her arm. Officer Spicer testified that based on her destructive and drunken behavior, he made the decision to transport her to Soin and place her on an involuntary hold. Mother testified that she had no recollection of cutting herself.

{¶ 18} Teresa Fleagle, lead psychiatric crisis care worker at Soin, testified that Mother refused to admit that she had a problem with alcohol and did not follow up with any of the outpatient services that were made available to her. Fleagle also testified that while Mother claimed that she only had half a glass of wine, her lab results revealed a blood alcohol level of .295, well over three times the legal limit.

{¶ 19} On March 20, 2014, J.R. again called the police and reported that Mother was very depressed and extremely intoxicated. Although she went voluntarily this time, Mother was again transported to Soin. Mother's lab results indicated that she had a blood alcohol level of .2042, well over the legal limit. Fleagle testified that she interviewed Mother who again stated that she did not believe that she had an alcohol

problem and refused any further outpatient treatment after she left Soin.   We note that Mother continued to deny that she had an alcohol problem when she testified at the hearing.   In fact, she blamed J.R., Father, and her family for her current predicament and refused to shoulder any responsibility for her actions.

{¶ 20} Based on the testimony adduced at the hearing, the trial court found that Mother's convictions and hospitalizations for alcohol related issues established that it was in the best interests of N.S. for the shared parenting plan to be terminated and for legal custody to be granted to Father.   After conducting a review of the transcript, and the extensive findings of the magistrate and trial court, we find that the decision to terminate the shared parenting plan was not against the manifest weight of the evidence. Competent, credible evidence was adduced which supported the determination of the trial court to terminate the shared parenting plan.

{¶ 21} The judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

M.M.
Jennifer L. Brogan
Hon. Nick Kuntz